## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| 8 ERIE ST. JC LLC,<br><br>                Plaintiff,<br><br>v.<br><br>CITY OF JERSEY CITY, et al.<br><br>                Defendants. | Civil Action No.<br><br>19-cv-09351 (JMV) (JRA)<br><br>**OPINION** |

Plaintiff 8 Erie St. JC LLC ("Plaintiff") moves to compel the deposition of Steven M. Fulop, the Mayor of Jersey City, New Jersey ("Mayor Fulop"), who is not a party to this litigation (the "Motion").  ECF Nos. 113, 121.  Defendants City of Jersey City (the "City") and Jersey City Council (the "Council") (collectively, "Jersey City") oppose the Motion.  ECF Nos. 116, 125.  Defendants Jersey City Planning Board (the "Planning Board") and Jersey City Redevelopment Agency ("JCRA") filed no opposition to the Motion.  The Court has considered the parties' submissions and decides the Motion without oral argument.  *See* FED. R. CIV. P. 78; L.Civ.R. 78.1.  For the reasons set forth below, Plaintiff's Motion is **DENIED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

This action arises out of Plaintiff's allegations that Jersey City, the Planning Board, and JCRA (collectively, "Defendants"), violated Plaintiff's constitutional, state law, and private contractual rights by unlawfully enacting and selectively enforcing two city ordinances that precluded Plaintiff from entering into leases with chain

stores and franchises.  *See* Second Am. Compl. ("SAC"), ECF No. 81 ¶ 5.[1]  The history

of this case stems back to July 20, 2012, when Plaintiff and the JCRA entered into an

agreement for the construction and management of property located at 8 Erie Street

in Jersey City (the "Property").  *Id.* ¶ 21.  The Property was to be completed pursuant

to a redevelopment plan, which, at the time, did not restrict Plaintiff's ability to lease

commercial space to chain stores or, as the parties call them, "formula business"[2]

tenants.  *Id.*  Pursuant to the agreement, Plaintiff purchased the Property for

$1,950,000 and spent over $7,000,000 to redevelop it by building commercial space

on the ground and basement level floors and residential rental units on the second

and third floors.  *Id.* ¶¶ 23-25.

On March 26, 2015, Matt Ward ("Ward"), the Secretary and Senior Planner of

the Planning Board, and Jeff Wenger ("Wenger"), Principal Planner, wrote an inter-

office memorandum informing the Planning Board that Mayor Fulop had requested

that "the Planning Division . . . review formula business restrictions nationwide and

propose a definition and set of standards appropriate for Jersey City."  ECF No. 113-

1 at 34.  Another inter-office memorandum dated April 13, 2015, from Ward to

members of the Council, shows that Mayor Fulop requested that the Council consider

---

[1] The allegations set forth here are derived from Plaintiff's Second Amended Complaint, ECF. No. 81, filed pursuant to the District Court's Opinion and Order granting in part and denying in part Defendants' second motion to dismiss, ECF Nos. 77, 78.

[2] City Ordinance 15.052 defined formula businesses as, "[a] type of business establishment that is contractually obligated to maintain two or more standardized characteristics such as: array of merchandise, menu items, facade design, décor, color scheme, uniform apparel, signage, trademark, or servicemark; and where 10 or more other establishments that are similarly contractually obligated to the same corporate entity are in operation within 300 miles of Jersey City."  ECF No. 113-1 at 10-13; *see* SAC ¶ 43.

an amendment "pertain[ing] to the definition of 'Formula Business.'"  *Id.* at 32.

On May 13, 2015, the Council adopted City Ordinances 15.052 and 15.053 (collectively, the "Ordinances") which, combined, limited Plaintiff's ability to lease commercial space to formula businesses.  ECF No. 113-1 at 14, 21; *see* SAC ¶¶ 45, 59. The most relevant Ordinance states, in part:

> Jersey City Municipal Council has determined that formula business . . . may detract from downtown Jersey City's unique community character; and . . . the Jersey City Master Plan recommends additional land use regulations restricting formula businesses; and . . . downtown Jersey City supports a great variety of unique local businesses while most national chains in downtown have located within enclosed shopping malls, strip shopping centers, or near the waterfront; and [the] Municipal Council has determined that this pattern of retail development should remain in order to preserve Downtown's distinctive sense of place and unique neighborhood character[.]

ECF No. 113-1 at 15 (Ordinance 15.053).  Ordinance 15.053 lists approximately forty-one (41) locations impacted by the decision, including the Property.  *Id.*  The Ordinances allowed those locations to lease only 30% of the ground floor to formula business establishments.  *See* ECF No. 113-1 at 19.

On June 19, 2015, the City issued Plaintiff a Certificate of Occupancy for the Property.  SAC ¶ 29.  Plaintiff contends that it was economically harmed because the City selectively applied the Ordinances to Plaintiff's detriment by prohibiting Bareburger—a prospective formula business tenant—from leasing the Property, *id.* ¶ 75, while permitting a different formula business, namely Krispy Kreme, to open in another redevelopment area also subject to the Ordinances, *id.* ¶¶ 65-70.

On May 17, 2017, about two years after the passage of the Ordinances, Ward

wrote a memorandum to the Council, recommending that the restriction on formula businesses be repealed. ECF No. 113-1 at 71. The main reason for the recommendation was that the Planning Division re-examined the Ordinances and case law and concluded that the Ordinances "may not hold up under strict scrutiny of federal laws." *Id.* On June 15, 2017, the Council rejected the recommendation to repeal the Ordinances and kept in place the restrictions on formula businesses. ECF No. 113-1 at 76-78. Ultimately however, on April 17, 2019, the Council repealed the Ordinances, concluding that the Ordinances likely violated the Commerce Clause of the United States Constitution and were not supported by a factual demonstration sufficient to justify such differential restrictions on formula businesses. ECF No. 116-1 at 21; *see* SAC ¶ 78.

On April 5, 2019, Plaintiff filed this action against Defendants, asserting various causes of actions. ECF No. 1. Plaintiff subsequently amended the Complaint after the District Court granted in part and denied in part Defendants' motions to dismiss. *See* ECF Nos. 57, 78. Most relevant to this Opinion are Count I (violation of the Commerce Clause of the U.S. Constitution) and Count II (violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution) of Plaintiff's SAC. *See* SAC ¶¶ 80-105. Notably, Mayor Fulop is not a defendant in this lawsuit.

On April 8, 2022, Plaintiff served a Rule 30(b)(1) deposition notice on Jersey City seeking to depose Mayor Fulop. *See* ECF No. 113-1 at 94-95. In response, the City refused to produce Mayor Fulop and proposed Ward as an adequate substitute.

*See id.* at 98-100, 106-07.  On September 29, 2022, after much back and forth between the parties, Plaintiff deposed Ward via videoconference.  *See id.* at 44-58.  Plaintiff contends, however, that "Ward was unable to testify to the key topics identified in Plaintiff's letter regarding . . . Mayor [Fulop's] direct personal involvement and knowledge of the adoption, revocation, and enforcement of the Ordinances[,]" and that Mayor Fulop's deposition is therefore necessary.  ECF No. 113-2 at 12.

On October 28, 2022, Plaintiff filed the instant Motion seeking to compel the deposition of Mayor Fulop, arguing that Mayor Fulop's testimony is necessary and relevant to Plaintiff's constitutional claims because Mayor Fulop "personally and directly intervened" to: (i) enact the Ordinances in "violation of the Commerce Clause's prohibition on discrimination against interstate commerce"; and, (ii) create an "irrational and wholly arbitrary" exception to the Ordinances in violation of the Equal Protection Clause.  ECF No. 113-2 at 14-18.  Jersey City opposes the Motion, arguing that the unambiguous nature of the Ordinances militates against permitting Plaintiff to depose Mayor Fulop.  *See generally* ECF No. 116.  Jersey City further identifies numerous alternative witnesses and sources who, Jersey City asserts, hold the same information Plaintiff seeks to obtain from Mayor Fulop.  *See* ECF No. 116 at 6-12.

Through its reply, Plaintiff counters that Mayor Fulop's unique personal knowledge is necessary and essential to the claims and defenses in this action.  *See generally* ECF No. 121.  In its sur-reply, Jersey City reiterates its previous arguments and adds another—that Mayor Fulop's testimony "about the purpose, intent and his

general knowledge regarding the adoption of the . . . Ordinances and Krispy Kreme's application cannot prove Plaintiff's claims because the . . . Ordinances were not in effect at the time Plaintiff sought to lease space to Bareburger[,]" a formula business. ECF No. 125 at 3-4.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The material "need not be admissible in evidence to be discoverable." *Id.*; *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) ("[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted."). Discovery may also be obtained from any person by way of deposition. *See* FED. R. CIV. P. 30. However, "for good cause shown," a court may grant a protective order from discovery. FED. R. CIV. P. 26(c).

In circumstances where a party seeks to compel the deposition of a high-level government official, the "*Morgan* Doctrine" applies. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). Although the Third Circuit has not spoken directly on the issue, courts in this District have interpreted the *Morgan* Doctrine to hold that, "[a]bsent extraordinary circumstances, good cause exists to preclude the deposition of a high level government official[.]" *Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008) (citations omitted); *see also United States v. Sensient Colors*, 649 F. Supp. 2d 309, 316 (D.N.J. 2009); *Johnson v. Att'y Gen. of New Jersey*, No. 12-cv-4850, 2015 WL

4915611, at *2 (D.N.J. Aug. 18, 2015); *Estate of King v. City of Jersey City*, No. 15-cv-06868, ECF No. 80 at 6-8 (D.N.J. July 20, 2018); *Goldrich v. City of Jersey City*, No. 15-cv-00885, ECF No. 101 at 4-5 (D.N.J. Feb. 1, 2017). Courts have offered various rationales for the *Morgan* Doctrine. The Supreme Court "feared the effects of nettlesome mind-probing and analogized the high-ranking government official to a judge[.]" *Sensient Colors*, 649 F. Supp. 2d at 316 (citing *Morgan*, 313 U.S. at 422). Other courts have observed that the *Morgan* Doctrine permits high-level government officials to avoid disruption or diversion from their official tasks. *Id.* (citing *Buono*, 249 F.R.D. at 470 n.2). And another court noted that without the protection of the doctrine "otherwise upstanding individuals [would be discouraged] from public service." *Id.* (citing *United States v. Wal-Mart Stores*, No. 01-cv-1521, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002)). These rationales all share one common thread—avoiding undue interference with public service.

Of course, that is not to say that high-level public officials are immune from depositions. They are not. Rather, courts must look to whether extraordinary circumstances warrant their deposition. When making that determination, courts in this District consider the *Buono* factors, a five-prong test under which the party seeking the deposition must show:

> (1) that the official's testimony is necessary to obtain relevant information that is not available from another source;
> (2) the official has first-hand information that could not be reasonably obtained from other sources;
> (3) the testimony is essential to that party's case;
> (4) the deposition would not significantly interfere with the ability of the official to perform his government

7

duties; and

(5) that the evidence sought is not available through any
   alternative source or less burdensome means.

*Buono*, 249 F.R.D. at 470 n.2 (citing *Bogan v. City of Boston*, 489 F.3d 417, 423-24

(1st Cir. 2007)).   Because some of these prongs are interrelated, they need not be

addressed in order or in isolation.   *See Sensient Colors*, 649 F. Supp. 2d at 322

(considering prongs (1), (2), and (5) in the same analysis).

## III.   DISCUSSION

The parties do not dispute that Mayor Fulop is a high-level government official

who is subject to the protections afforded under the *Morgan* Doctrine.[3]   Rather, the

parties dispute whether exceptional circumstances exist to warrant Mayor Fulop's

deposition.[4]   It should be noted that a Magistrate Judge in this District previously

declined to order Mayor Fulop's deposition in a case in which he was a defendant.   *See*

*generally Goldrich*, ECF No. 101.   Here, Mayor Fulop is even further removed from

the case as he is not even a named defendant.   The Court nonetheless weighs the

---

[3]   Initially, Plaintiff presented its motion through the lens of the "Apex Doctrine," which applies in circumstances where discovery is sought from a corporate executive and permits the court to recognize "a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue."   *Harapeti v. CBS Television Stations Inc.*, No. 21-cv-15675, 2021 WL 8316391, at *2 (D.N.J. Dec. 1, 2021) (quoting *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-cv-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015)).   In their opposition brief, Jersey City appears to abandon the Apex Doctrine and instead responded with an analysis of the *Morgan* Doctrine, which specifically applies to high-ranking government officials.   *See* ECF No. 116 at 14-16.   Plaintiff appears to agree in its reply that the *Morgan* Doctrine is the appropriate legal test.   *See* ECF No. 121 at 4-5.   Accordingly, the Court will not address the Apex Doctrine.

[4]   Although Plaintiff does not contest the applicability of the *Buono* factors to the instant Motion, the Court nevertheless finds (consistent with other courts in this District) that Mayor Fulop does indeed qualify as a high-level government official.   *See, e.g.*, *Estate of King*, ECF No. 80 at 16:3-5 ("[T]here could be no dispute that Mayor Fulop qualifies as a current high-ranking official."); *Goldrich*, ECF No. 101 at 8 (same).

*Buono* factors to ascertain whether Plaintiff has met its burden to compel Mayor Fulop's deposition.

### A. Personal Involvement, Knowledge, and Whether the Information Is Available from Other Sources

Certain *Buono* prongs have overlapping concepts.  The District Court in *Sensient Colors* noted that "[p]rongs (1), (2), and (5) of the *Buono* inquiry collaboratively direct the court's attention to a factor consistently present in a finding of extraordinary circumstances—personal involvement or knowledge."  649 F. Supp. 2d at 322.  But *Sensient Colors* cautioned that "[a]lthough personal involvement in or knowledge of the subject events seems to be a necessary prerequisite for deposing a high-ranking government official, it is not sufficient.  A party must still show that the information cannot be gleaned from other sources or achieved through less burdensome means."  *Id.* at 323 (citations omitted).

Plaintiff contends that "Mayor Fulop has unique and extensive personal knowledge on key substantive issues" concerning, among other things, his "statements to the press" regarding the Ordinances and the extent to which his political campaign "influenced the adoption and scope" of, and any exemptions to, the Ordinances.  ECF No. 121 at 6-7.  To support this contention, Plaintiff refers to Ward's deposition as evidence that Mayor Fulop "was indisputably the genesis of the Ordinance[s] and had direct input as to what to ban, what not to ban, and how broad it should be" and that "[n]one of the lower-level staff identified can answer any of the critical questions as to why [Mayor] Fulop initiated this policy, what his goals and objectives were, and what criteria he used to craft its scope."  *Id.* at 8.  The Court,

9

however, has reviewed Ward's deposition and interprets his responses differently. Although Ward was not personally privy to the underlying goals and objectives concerning the enactment and scope of the Ordinances, Ward identified several individuals who were. For example, when asked who initially directed Ward to conduct research on formula business restrictions, Ward replied that Wenger, his supervisor, made the request on Mayor Fulop's behalf. *See* ECF No. 113-1 at 46, 87:4-88:19. Similarly, when questioned about Mayor Fulop's personal involvement in defining the scope of the Ordinances, Ward responded that it was Wenger who relayed information from *the administration*[5] regarding the scope. *Id.* at 51-52, 185:18-188:18. Later, when asked about Mayor Fulop's involvement with Krispy Kreme, Ward identified Kate Lawrence as the person in charge of the application for the Planning Board.[6] *Id.* at 55, 198:3-17. At most, Ward's responses throughout his deposition simply confirm that other individuals hold as much, if not more, knowledge than he. Indeed, Ward's testimony reveals that he repeatedly emphasized his lack of

---

[5] Notably, Ward does not specifically name Mayor Fulop, but instead identifies "the administration." ECF No. 113-1 at 51-52, 185:18-188:18.

[6] Plaintiff alleges in the SAC that the Ordinances were not applied fairly. *See* SAC ¶¶ 65-70. As an example, Plaintiff notes that in early 2017, the City permitted Krispy Kreme, a formula business, to open a store in the restricted zone. *See id.* ¶ 66. Plaintiff seeks to depose Mayor Fulop about the City's decision. In support of that argument, Plaintiff points to emails sent to and received from Mayor Fulop. The Court has reviewed those emails. *See* ECF No. 113-1 at 83-85. The Court is not convinced that those emails are sufficient to defeat the protections of the *Morgan* Doctrine. Specifically, in preparation for a Planning Board meeting, Mayor Fulop emailed Planning Board members, including Joey-Ann Morales, Marcos Vigil, Maryann Bucci-Carter, Anthony Cruz, and Tanya Marione on December 15, 2016, and told them: "We were told that Krispy Kreme was not a regular store but they are requesting regular signage which is problematic for us and the ordinance. Seems like they misled us. Please remove that approval unless we have more clarity[.]" *Id.* at 85. In a subsequent email, Mayor Fulop wrote: "Just defer to Marcos [Vigil] on this. They may have a version." *Id.* at 84. Looking at these emails in context, the Court concludes that Mayor Fulop certainly has relevant information about the decision that led the City to exempt Krispy Kreme from the restriction of the Ordinances, but that he is not the only individual that does. As highlighted *infra* note 7, there are others who have direct knowledge on this issue.

10

awareness concerning Mayor Fulop's priorities, policies, and objectives concerning formula business restrictions. *See id.* at 46-50, 87:4-157:21.

Consistent with Ward's deposition responses, Jersey City, through its opposition, identifies more than eight (8) individuals who it claims were directly involved with researching, sponsoring, drafting, and enacting the Ordinances, and who may possess the same, or more, information concerning Plaintiff's constitutional claims. *See* ECF No. 116 at 8-11. These individuals include, among others, a former Councilperson, the Director of the Planning Division, and supervisors, each of whom were directly involved with the issues upon which Plaintiff seeks to depose Mayor Fulop.[7] These proposed deponents are not, as Plaintiff argues, the "rank and file employees" who can only "testify as to the nuts-and-bolts issues" and who "simply are not privy to the decision-making processes occurring at the managerial levels[.]" *Sensient Colors*, 649 F. Supp. 2d at 323-24 (internal citation and quotation marks omitted). Given that Plaintiff has made no effort to depose any of these individuals, the Court finds that, at this time, Plaintiff has failed to sufficiently establish that the information Plaintiff seeks to obtain from Mayor Fulop is not readily available from another source.[8] *See Estate of King*, ECF No. 80 at 11 (barring Mayor Fulop's

---

[7] Jersey City proposes the following alternative deponents: (i) former Councilperson Candace Osborne who requested enactment of the Ordinances; (ii) Robert Cotter, Director of the Planning Division at the relevant times who initiated, sponsored, researched, drafted, and signed the Ordinances; (iii) Wenger, Ward's supervisor who initiated, sponsored, researched, and drafted the Ordinances; (iv) Kate Lawrence, who reviewed and handled the Krispy Kreme application; (v) Mary-Anne Bucci-Carter, who was directly involved with the Krispy Kreme application; (vi) Nick Taylor ("Taylor"), the City's Zoning Officer, who was directly involved with the Krispy Kreme application; (vii) Sharon Pagano, who was involved with the Krispy Kreme application; and (viii) Annisia Cialone, Ward's Director, who initiated an effort by the Planning Division to repeal the Ordinances. *See* ECF No. 116 at 8-11.

[8] The Court recognizes that following Ward's deposition, Plaintiff's managing member, Alfonso

deposition pursuant to the *Buono* factors when a plaintiff failed to depose lower-level police officers likely to have direct knowledge of relevant information).  The Court could end its analysis here and deny Plaintiff's Motion for this reason alone, but the Court finds it important to comment on the remaining *Buono* prongs.

### B.    Whether the Testimony Is Essential

The foregoing findings understandably bear on the Court's consideration of the third *Buono* prong—whether Mayor Fulop's testimony is essential to Plaintiff's case.[9] To answer that question, the Court must first contextualize the parties' dispute.  The crux of Plaintiff's SAC is that the Council passed two ordinances that were unconstitutional.  Counts I and II allege violations of the Commerce Clause of the U.S. Constitution and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.[10]    SAC ¶¶ 80-105.    This Court will not resolve those

---

Carrino, informally discussed some of these issues with Wenger and Taylor, *see* ECF No. 121 at 10-11; however, an informal discussion is not akin to a deposition conducted under oath or affirmation and pursuant to Rule 30 of the Federal Rules of Civil Procedure.  Further, as discussed above, Wenger and Taylor are just two of many potential alternative sources of information.  The Court's finding, however, should not be construed to mean that Plaintiff must depose *every* available source.  Rather, the Court holds that, at this time, there is insufficient evidence to show that the information Plaintiff seeks is not readily available from alternative sources.

[9] Prong (1) of the *Buono* analysis requires courts to consider whether testimony is "necessary," and prong (3) requires court to consider whether testimony is "essential."  249 F.R.D. at 470 n.2.  Because the terms "essential" and "necessary" are synonymous, under the circumstances of this case, the Court reaches the same conclusion as to both inquiries.

[10]  The Court notes that the SAC contains additional counts: Count III, violation of N.J.S.A. 40:55D-62.1, which appears to allege that Jersey City did not provide Plaintiff with sufficient notice of the hearing that led to the adoption of the Ordinances; Count IV, which appears to allege that the Ordinances violated the City's zoning regulations; Count V, violation of New Jersey's doctrine of fundamental fairness; Count VI, breach of the implied covenant of good faith and fair dealing; and Count VII, which seeks declaratory and injunctive relief.  *See* SAC ¶¶ 106-44.  All of these counts appear to relate to the same nucleus of operative facts: the passage and application of the Ordinances.  Plaintiff does not explain how Mayor Fulop's testimony would be necessary and essential to each specific count.  Rather, Plaintiff's arguments are focused on Mayor Fulop's involvement in the passage, application, and repealing of the Ordinances.  The Court, therefore, focuses its analysis on whether

constitutional issues here.  But it is important to frame those issues broadly.

The Commerce Clause allows Congress "to regulate Commerce . . . among the several states[.]"  U.S. CONST. art. I, § 8, cl. 3.  The Supreme Court recognizes that the Commerce Clause "limits the power of the States to erect barriers against interstate trade."  *Lewis v. Bt Inv. Managers*, 447 U.S. 27, 35 (1980) (citations omitted).  That means there is a "dormant Commerce Clause [that] 'prohibits the states from imposing restrictions that benefit in-state economic interests at out-of-state interests' expense, thus reinforcing 'the principal of unitary national market.'"  *Am. Trucking Ass'ns v. Whitman*, 437 F.3d 313, 318 (3d Cir. 2006) (quoting *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002)).  The Third Circuit explained that "[t]here are two ways in which a statute could discriminate against interstate commerce and thus be subject to heightened scrutiny: on its face (interchangeably referred to as having a discriminatory purpose) or in effect."  *Id.* at 319 (citations omitted).

Plaintiff also invokes the Fourteenth Amendment to the U.S. Constitution, which states, in relevant part, that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]"  U.S. CONST. amend. XIV, § 1.  More narrowly, though, Plaintiff's claim rests on the "class of one" theory announced in *Willowbrook v. Olech*, 528 U.S. 562 (2000).  *See* ECF No. 113-2 at 17.  The Third Circuit has explained that "to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others

---

Mayor Fulop's testimony is necessary and essential to address the constitutional issues alleged in Counts I and II.

similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Plaintiff argues that Mayor Fulop has relevant, unique personal information about those constitutional issues for the following reasons: (1) he made statements to the press that the ordinances were intended to protect small businesses; (2) he requested modification to a draft ordinance to make it more strict; (3) the passage of the ordinances may have been influenced by his political ambition to run for governor; (4) he advocated for repealing the ordinances after he decided to not run for governor; and (5) he "pushed" for allowing another formula business, Krispy Kreme, to open within the restricted area.  ECF No. 121 at 7.

The Court is not persuaded that testimony from Mayor Fulop—who is not a defendant—is "essential" to address the constitutional disputes.  Whether Mayor Fulop advocated for or against the Ordinances or their application, and whether he lobbied for the Ordinances to advance his own political ambitions, are not facts necessary to analyze whether the Ordinances are constitutional.  What Plaintiff must show to prevail on its constitutional claims is that the Ordinances discriminated against interstate commerce either on their face or in effect, *see Am. Trucking Ass'ns*, 437 F.3d at 319, or that Plaintiff was denied equal protection as set forth in *Hill*, 455 F.3d at 239.  Mayor Fulop did not have the sole authority to pass or repeal the Ordinances.  The Ordinances only passed after the Council voted on them.  *See* ECF No. 113-1 at 14, 21.  And the record makes clear that the Council was not just rubber-

stamping requests.  In fact, on May 17, 2017, about two years after the passage of the Ordinances, Ward wrote a memorandum to the Council, recommending that the Ordinances be repealed because of constitutional concerns.  ECF No. 113-1 at 71.  The Council rejected that recommendation.  ECF No. 113-1 at 76-78.  It was not until April 17, 2019, that the Council repealed the Ordinances.  ECF No. 116-1 at 21-23; *see* SAC ¶ 78.  Further, because there appear to be individuals other than Mayor Fulop who possess the same, or more, information concerning Plaintiff's constitutional claims, the Court finds that, at this time, it is unclear whether Mayor Fulop's testimony is essential to Plaintiff's case.  *See Johnson*, 2015 WL 4915611, at *4 (finding the third *Buono* factor unclear where it appears that lower-level officials may hold the information sought by a plaintiff).

### C.   Interference with Performance of Government Duties

Finally, the fourth *Buono* prong calls for an analysis of whether Mayor Fulop's deposition would significantly interfere with his ability to perform government duties.  As a threshold matter, the Court notes that the burden lies with *Plaintiff*, not Jersey City, to demonstrate that Mayor Fulop's deposition would not interfere with his official duties.  *See Buono*, 249 F.R.D. at 470 n.2.  This undermines Plaintiff's argument that Jersey City has failed to establish any "disruption or diversion[.]"  ECF No. 121 at 13.  Indeed, Jersey City need not make such a showing.  And the Court need not engage in an analysis of this fourth prong where prong (3) is unclear and prongs (1), (2), and (5) militate against ordering Mayor Fulop's deposition.

The Court, however, does note that depositions of mayors arising from their

official duties are inherently disruptive.  Mayors have opinions.  Mayors advocate for policy changes and the passage and repealing of laws and regulations.  Mayors advocate for constituents.  That is their job.  If they had to testify every time a law they supported or opposed was challenged by civil litigants, lawsuits would have a crippling effect on the function of government.  *See Goldrich*, ECF No. 101 at 10-11. That is not to say that high-level officials could never be deposed in connection with legislation that they supported, opposed, or implemented.   But, under the circumstances of this case, the Court finds it difficult to order Mayor Fulop to be deposed and, therefore, the Court declines to address whether his deposition would interfere with his ability to perform his government duties.[11]

## IV.   CONCLUSION

For the reasons set forth above, this Court **DENIES** Plaintiff's motion to compel Mayor Fulop's deposition.   An appropriate Order accompanies this Opinion.

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2023

---

[11]  The Court further notes that the cases Plaintiff relies on in connection with the fourth *Buono* prong are distinguishable.  *See* ECF No. 121 at 13-14 (citing *Holt v. Pennsylvania*, Nos. 18-cv-01272, 18-cv-02448, 2020 WL 435752 (M.D. Pa. Jan. 28, 2020); *Summerville v. Gregory*, No. 14-cv-7653, 2017 WL 3208346 (D.N.J. July 27, 2017)).  In both cases, courts fashioned a solution to allow high-level officials to be deposed in the least disruptive way.  But in those cases, unlike here, the courts first found it necessary to depose the high-level officials.  *See Holt*, 2020 WL 435752, at *4 (citation omitted) (allowing a limited deposition of the Pennsylvania Department of Homeland Security Director after finding that the information could not "be determined from other sources or achieved through less burdensome means"); *Summerville*, 2017 WL 3208346, at *3 (allowing deposition of a State Police Colonel only after finding that the Colonel was "a defendant in his personal capacity" and that "personal involvement and pattern-and-practice evidence are required in the § 1983 context").

16